IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger

Civil Action No. 16-CV-2111-MSK

**BRETT MARINO,**

    Plaintiff,

*v.*

**COLORADO DIVISION OF VOCATIONAL REHABILITATION,**

    Defendant.

## OPINION AND ORDER DISMISSING CASE

**THIS MATTER** comes before the Court on the Plaintiff's Complaint (**# 1**), the Plaintiff's Opening Brief (**# 29**), the Defendant's Response (**# 30**), and the Plaintiff's Reply (**# 33**). For the reasons below, this case is dismissed, without prejudice.

### I.    JURISDICTION

Brett Marino, appearing *pro se*,[1] appeals from a final decision of the Colorado Office of Administrative Courts denying him vocational services under the federal Rehabilitation Act of 1973. *See* 29 U.S.C. §701 *et seq.* The Rehabilitation Act authorizes Mr. Marino to seek review in a federal court, but Colorado's Division of Vocational Rehabilitation (DVR) claims that it is immune to suit in federal court under the Eleventh Amendment to the Constitution. The DVR thus requests dismissal of this action for lack of subject-matter jurisdiction. This Court exercises jurisdiction to determine whether the action can proceed.

---

[1] Because Mr. Marino is proceeding as a *pro se* plaintiff, the Court will construe his pleadings and other filings liberally and will not hold them to the same stringent standards applied to pleadings drafted by lawyers. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

## II. BACKGROUND

Mr. Marino receives Social Security benefits and is therefore presumptively eligible to receive vocational rehabilitation services as well. He applied for vocational services with the DVR, which is Colorado's agency for administration of vocational rehabilitation services to individuals with disabilities under the Rehabilitation Act.

The severity of Mr. Marino's disabilities caused the DVR to question his ability to benefit from vocational rehabilitation services, and his location in Alamosa, Colorado, caused it to question whether the services that he requested, which were located more than 300 miles from his residence, would be beneficial to him. To resolve these questions, the DVR requested additional information, but Mr. Marino refused to provide it. Instead, he brought four appeals before the Colorado Office of Administrative Courts, which rendered a final decision in July 2016 upholding the DVR's questioning of Mr. Marino's eligibility for services and its denial of services provided 300 miles from his residence.

## III. ISSUE PRESENTED

Mr. Marino brings this action seeking review of the administrative appeal decision. He raises many challenges, but before any can be addressed, the Court must resolve the threshold issue raised by the DVR. The issue is thus whether Colorado waived its Eleventh Amendment immunity from suit in federal court for purposes of an action brought pursuant to § 722 of the Rehabilitation Act (29 U.S.C. § 722(c)(5)(J)(i)).

## IV. DISCUSSION

The DVR's challenge comes at the intersection of state and federal law. It argues that, although Congress allows for judicial review of DVR decisions in either state or federal court, Colorado must waive its sovereign immunity for the action to proceed in federal court. The

DVR contends that Colorado has not waived its sovereign immunity and thus this Court lacks the subject-matter jurisdiction to review the DVR decision, or the appeal decision by the Colorado Administrative Court.

Generally, the Eleventh Amendment protects states and their agencies from suits brought by state residents in federal court. *Sturdevant v. Paulsen*, 218 F.3d 1160, 1164 (10th Cir. 2000). However, there are three exceptions to Eleventh Amendment immunity: (1) a state may consent to suit in federal court, (2) Congress may abrogate a state's sovereign immunity by legislation, and (3) a plaintiff may seek prospective relief under *Ex parte Young*, 209 U.S. 123 (1908). *Levy v. Kan. Dep't of Social & Rehab. Servs.*, 789 F.3d 1164, 1168 (10th Cir. 2015). A state's consent to be sued in federal court may be inferred if it accepts federal funds clearly conditioned upon consent to suit, but, "mere receipt" of federal funds in the absence of a clear condition that acceptance will constitute consent to be sued in federal court is insufficient to establish the state's consent. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 247 (1985). Mr. Marino does not seek prospective relief under *Ex parte Young*, so the questions are whether either of the first exceptions to Eleventh Amendment immunity are present here.

The Rehabilitation Act was enacted to serve several purposes. One of its purposes is to prohibit discrimination on the basis of disability in programs conducted by federal agencies, in programs receiving federal financial assistance, in federal employment, and in the employment practices of federal contractors. The anti-discrimination provision, § 504, states that no "otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any" federal agency. 29 U.S.C. § 794(a).

Another purpose of the Rehabilitation Act was to create and fund programs administered by the states to provide rehabilitation and vocational services to persons with disabilities. 29 U.S.C. § 720(a). To obtain federal funding, a state is required to submit a plan for the provision of vocational services. If, in provision of those services, a person is aggrieved by a decision made by the state, the Act states that the person may seek judicial review in either state or federal court. 29 U.S.C. § 722(c)(5)(J)(i). Under Colorado law, however, a person who is aggrieved by a benefits decision made by the state is directed to seek judicial review in a state district court. C.R.S. § 24-4-106(4).

Here, Mr. Marino seeks federal review of the decision denying him benefits under a federally funded plan pursuant to 29 U.S.C. § 722(c)(5)(J)(i). The question of whether Colorado has waived its sovereign immunity with regard to claims of discrimination in violation of **§ 504** is resolved. In *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 247 (1985), the Supreme Court held that the Rehabilitation Act did not abrogate a state's Eleventh Amendment immunity from federal suit because the Act was insufficiently specific. It did not clearly demonstrate Congress' intent to subject states to federal jurisdiction for purpose of resolving claims of discrimination in violation of § 504, nor did it clearly couple a state's receipt of funds with a waiver of sovereign immunity. *Id*. at 246–47.

In response to *Scanlon*, Congress passed 42 U.S.C. § 2000d-7(a)(1). It states:

A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of section 504 of the Rehabilitation Act [29 U.S.C. § 794], title IX of the Education Amendments of 1972 [20 U.S.C. § 1681 *et seq*.], the Age Discrimination Act of 1975 [42 U.S.C. § 6101 *et seq*.], title VI of the Civil Rights Act of 1964 [42 U.S.C. § 2000d *et seq*.], or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.

The Tenth and other Circuits have uniformly held that 42 U.S.C §2000d-7(a)(1) contains

4

a clear expression of Congress' intent that if states accept funds under the Rehabilitation Act, that they consent to resolve § 504 disputes in federal court. *See Brockman v. Wyo. Dep't of Fam. Servs.*, 342 F.3d 1159, 1167–68 (10th Cir. 2003); *Robinson v. Kansas,* 295 F3d 1183, 1189–90 (10th Cir. 2002 (collecting cases).

This statute, however, only expressly addressed § 504 — the anti-discrimination provision — not the provisions addressing vocational services under §722 which are fundamentally different. Section 504 prohibits discriminatory activity and §722 establishes a method to fund and provide services to citizens in need. There is nothing in 42 U.S.C §2000d-7(a)(1), that expresses Congress' intent to condition funding for vocational services on a state's waiver of sovereign immunity, and since its enactment there has been no other amendment directed at 29 U.S.C. § 722 or any other statutory provision related to vocational services. Thus, the question presented is whether 42 U.S.C §2000d-7(a)(1) covers the entirety of the Rehabilitation Act, including §722.

Finding nothing in 42 U.S.C §2000d-7(a)(1) that suggests Congress' intent in this regard, Tenth Circuit on the issue[2], the Court turns to the canon of statutory interpretation *expressio unius est exclusion alterius*, which applies when the items expressed are members of an 'associated group or series'. Under this doctrine, if items are part of an associated group, but are not mentioned, it is proper to infer that those not mentioned were excluded by deliberate choice, rather than inadvertence. *Barnhart v. Peabody Coal Co.*, 537 U.S. 149, 168 (2003). In this regard, both §504 and §722 are part of the Rehabilitation Act, but 42 U.S.C §2000d-

---

[2] The Tenth Circuit has, however, has addressed the omission of reference to the Americans with Disabilities Act (ADA) in 42 U.S.C. § 2000d-7, finding that there is no "clear evidence that Congress intended for states to waive their immunity under the ADA by accepting federal funds". *Levy*, 789 F.3d at 1171. Such limited interpretation of scope of the language in 42 U.S.C. § 2000d-7 is consonant with the analysis in this context.

7(a)(1) refers only to § 504.  In contrast, it refers to the entire Age Discrimination Act of 1975. Had Congress intended 42 U.S.C §2000d-7(a)(1) to apply to the entire Rehabilitation Act, it is fair to assume that it would have so stated, and that its reference to §504 in the Rehabilitation Act was a purposeful circumscription.  This interpretation also makes contextual sense.  The subject matter of §504 of the Rehabilitation Act is akin to the Age Discrimination Act – prohibition of discrimination – and neither are like the substance of §722 which pertains to rehabilitative programs.  Thus, as to §722, *Scanlon*'s holding applies.  As to this portion of the Rehabilitation Act, its provisions are not sufficiently specific to abrogate Colorado's Eleventh Amendment immunity or to manifest "a clear intent to condition participation in the programs funded under the Act on a State's consent to waive its constitutional immunity."  473 U.S. at 246–47.

This conclusion is consistent with the reasoning of the Fifth Circuit in *Hurst v. Texas Department of Assistive Rehabilitation Services*.  There, the Circuit Court noted that the Rehabilitation Act is not a comprehensive regulatory scheme preempting state action and that states are free to offer services with or without participation in the federal program.  482 F.3d 809, 814 (5th Cir. 2007).  It then held that § 722 "does not contain the necessary 'clear-statement' requiring a waiver of Eleventh Amendment immunity if the State of Texas accepts federal funds for this program."  Because Texas had not voluntarily waived its Eleventh Amendment immunity for vocational services, the court affirmed dismissal of the suit.  *Id*.

Mindful that Mr. Marino is proceeding *pro se*, the Court has carefully reviewed his Complaint and Opening Brief, and finds no argument that mentions or could be asserted under § 504.  Accordingly, absent an applicable exception that functions to waive Colorado's Eleventh Amendment immunity, Mr. Marino must appeal the ALJ's decision to state district

court. This appeal is dismissed.

## VI. CONCLUSION

For the foregoing reasons, this appeal is **DISMISSED WITHOUT PREJUDICE** for lack of jurisdiction. The Court expresses no opinion on the merits of the ALJ's decision. Judgment of dismissal without prejudice shall issue in favor of the DVR and the Clerk shall close this case.

Dated this 12th day of January, 2019.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge